INHABITANTS OF DEERFIELD *vs.* INHABITANTS OF GREENFIELD.

The town of a pauper's settlement is not liable to another town, in which the pauper becomes furiously insane and falls into distress, for the expenses of his removal to an asylum for the insane in another state, and for his support and medical attendance there, even though a removal to some asylum be necessary to the comfort and relief of the pauper, and as a matter of economy and humanity.

ACTION OF CONTRACT to recover the expenses incurred by the plaintiffs for the support, board, lodging and medical attendance of Abigail Catlin, a pauper, fallen into distress in Deerfield, and standing in need of immediate comfort and relief, and alleged to have her lawful settlement in Greenfield. Trial in the court of common pleas, before *Perkins*, J. to whose rulings the plaintiffs alleged exceptions. The whole case appears in the opinion.

*C. P. Huntington*, for the plaintiffs.

*D. Aiken*, for the defendants.

SHAW, C. J. In recurring to the bill of particulars of the demand, for the recovery of which this action is brought, it is found to consist wholly of the expenses of removing the pauper to the Asylum for the Insane at Brattleborough in Vermont, and of her board and medical attendance at the asylum, on two several occasions. The judge, at the trial, having decided that these expenses, for the removal of a pauper to an asylum out of the State, and for her support there, could not be recovered against the defendant town, though she had her settlement therein, all inquiry upon that point was excluded; of course we

are now to consider the question in the same manner as if that fact had been proved. It appears by the bill of exceptions, that the pauper became furiously insane, and thereby fell into distress, in the plaintiff town, and was thence immediately removed, by the overseers, to the asylum in Brattleborough.

From this statement it is manifest that it became the duty of the overseers of Deerfield, to afford her immediate relief, whether her settlement was there, or in the defendant town, or if she had no settlement in any town in the Commonwealth.    *Smith* v. *Colerain,* 9 Met. 492.

The question is, whether the plaintiff town, bound to afford immediate relief, if not the town of the pauper's settlement, could charge the town of her settlement with the expenses of her removal to and support in an asylum out of the State, or with any part thereof, even though a removal to some asylum was necessary to the comfort and relief of the pauper, and as a matter of economy and humanity. The fact, that she had formerly been committed to the same asylum, and supported there by her friends, though it might be a motive for the selection, can have no bearing upon the question of the right of the town to send her to any asylum out of the State.

The plaintiffs, in support of their exception, rely upon the authority of *Marlborough* v. *Rutland,* 11 Mass. 483. In that case, the paupers had fallen into distress in the plaintiff town, and been there relieved, and were afterwards, by contract, supported in another town within the State, at the plaintiff town's expense, with the consent, and apparently at the request of the paupers, being supported in the house of a relative; and it was held, that the plaintiff town might recover against the town of their settlement, for the support thus furnished. But this was so decided, upon the understanding that the plaintiff town reserved the power and held themselves liable to bring the paupers back, and have them there ready for removal, if the defendant town elected to remove them.

In the case of *Westfield* v. *Southwick,* 17 Pick. 68, it was distinctly held, that although overseers have a right to appoint a suitable place for the relief and support of a pauper, and the

paupers have no power to choose their place of residence, yet that a pauper, having a settlement in the Commonwealth, cannot be sent out of the State without his consent, and that an offer to support a pauper in Connecticut, by the town of his settlement, was no sufficient provision for his support, within the requirements of the law.

The same doctrine is recognized, though not directly adjudged, in *Smith* v. *Colerain*, 9 Met. 492, before cited, holding that a town, bound to support a pauper, whether he has a settlement in it or not, may, by consent, be bound to pay for that support in another town, (in that case, a town out of the State,) with a stipulation to bring the person back at the expiration of the agreed term, if the pauper himself, who has a will upon the subject, would consent.

This is the extent to which the right of a town has been carried, to remove the pauper to another town for support. If it be to another state, it must be with the pauper's consent. And we think there is good reason for this limitation of the power of removal. Poor persons, depending upon public charity, though subject to many irksome and painful disabilities, are not deprived of their civil rights, or put out of the protection of the laws of their own state. Here, their right to a support, and a decent burial in case of death, are acknowledged and secured. The liability of towns is created and limited by law. The law does not carry their liability beyond the limits of the State, and the jurisdiction of its laws. If one of these settled inhabitants falls into distress, in another state, such town is neither bound to send or bring him away, or to reimburse any other person or corporation, who may afford him relief.

We cannot judicially take notice of the laws of Vermont; for instance, whether there be any provision for the support of foreign persons found there in distress, what are the general laws, or what the by-laws and regulations governing the asylum in question. Suppose, according to those regulations, or by virtue of powers vested in the trustees or managers, the unhappy patient in question should be discharged from the hospital, in three, six or twelve months, either cured or as incurable. The

Inhabitants of Deerfield *v.* Inhabitants of Greenfield.

case supposes that she is destitute of means and of friends. She may have neither the physical nor mental capacity to return either to the town of her settlement, or to that of her late residence, either of which would be liable, had she remained in the State, where the overseers found her. No relief may be provided for her in Vermont, and these are risks and perils which she is not bound to take; they may amount to a deprivation of valuable rights, essential to life and health, to which a pauper ought not to be subjected by the act of others, without her free consent. It is hardly necessary to add, that a person in the sad condition, in which this person is alleged by the plaintiffs to have been, when they directed her removal, was wholly incapable of giving any such consent.

But there is another consideration leading to the same result, which has great weight with us. Whatever might have been the expediency arising from views of humanity and economy, in sending an insane patient to an asylum in another state, such considerations are wholly superseded by the establishment of the State Lunatic Hospital, with regulations specially adapted to such a case. Rev. Sts. *c.* 48, § 8. Any lunatic, supported as a town pauper, may, with the consent of the trustees, be committed to the hospital by the overseers of the poor of his town, and shall be kept for a sum not exceeding the actual expense of his support, and, at the discretion of the trustees, for a less sum.

This statute was modified and amended by *St.* 1837, *c.* 228, § 7, by which the town of the lunatic's residence, when sent to the hospital, is made liable, in the first instance, with a remedy over against the town of his settlement; and it is further provided, that if the lunatic has no settlement in the State, the town of his residence shall not be liable. As the hospital is maintained at the charge of the State, this last clause leaves the charge for the support of a state pauper, where it ought to rest, upon the State.

The statute of 1841, *c.* 77, provides more specifically, that when a lunatic or insane person shall be sent to the hospital from any town in which he has not his legal settlement, and such town

shall pay the expense of his support at the hospital, such town may recover from the town, in which he has his legal settlement, the full amount so paid to the hospital.

Here, then, the lunatic is not removed from the jurisdiction of the laws of the Commonwealth, to the protection of which he is entitled; his rights are preserved; the town whence he is sent has the best support and relief provided for the sufferer, at a rate not exceeding the actual cost to the hospital, and, in proper cases, a part of that cost may be borne by the State; the sum actually paid is the precise measure of reimbursement from the town ultimately liable, thus avoiding litigation about rates of board, of medical attendance, and the like. These regulations are so beneficial, and so well adapted to secure the rights of all parties, so equitable and eminently practical in their operation, that they necessarily preclude the right of a town, called on for immediate relief, to send a lunatic pauper to an asylum out of the State, and then maintain an action for reimbursement of the expenses incurred, against the town of the pauper's settlement. The court are therefore of opinion that the decision of the judge was right.                    *Exceptions overruled.*